## UNION INVESTMENT CO. *v.* HARRISON COUNTY.

1. TAXATION. *Assessment of lands. Standard of valuation. Act of March 8, 1888.*
     Under this statute (Acts 1888, p. 24) in the assessment of land not in an incorporated town, its intrinsic value is to be determined by taking into consideration all circumstances that may tend to give a present value to it, such as its improvement, its proximity to navigation or transportation, or to any city, town, or village; also what the owner would be willing to accept or expect to get for it, if disposed to sell, but not what it would bring at a forced sale. The probability that a projected and partly built railroad may never be completed, in which event the lands may become comparatively valueless, is not a factor to be considered.

2. SAME. *Contemplated improvements. Enhanced value.*
     But if the probability or possibility of the completion of the said railroad has tended to enhance the value of lots in such town, and has, in fact, so enhanced them as to make the owners willing to accept, or expect to get, for them not less than a certain sum, their assessment at that figure by the assessor should not be reduced by the board of supervisors.

FROM the circuit court of Harrison county.

HON. S. H. TERRAL, Judge.

The facts are sufficiently stated in the opinion. The assessment of the lands in controversy was made under the act of March 8, 1888, entitled "An act to equalize assessments in different counties of the state," section 3 of which is as follows :—

"SEC. 3. Be it further enacted, that in order to determine the quality to which lands belong, the assessors shall, if practicable, make a personal examination of the same, and if not practicable, it shall be their duty diligently to inquire and to ascertain from the best sources of information within their power, the character and reputation of such lands, and to determine the quality of all the lands in their several counties according to the principles of this act ; and in determining the qualities of the lands, in the different classes, the assessors shall take into consideration the improvements upon said lands, and their proximity to navigation and transportation ; provided, that nothing contained in this section shall apply to lands within any incorporated cities or towns, or any villages or stores in this state."

The briefs of counsel deal solely with the evidence, and, without citation of authorities, discuss its sufficiency to sustain the assessment.

*Nugent & McWillie*, for appellant.

*W. G. Evans, Jr.*, for appellee.

WOODS, C. J., delivered the opinion of the court.

The tax assessor of Harrison county having completed the assessment-roll of taxable lands in said county, the appellant filed its written objection to the assessment of its lots in Gulfport, and prayed, impliedly, a reduction in the assessment. The board of supervisors at the August term, 1889, of the supervisor's court, having overruled the objections filed by the appellant, and having declined to make any reduction in the assessment, an appeal was taken by the Investment Company to the November term, 1889, of the circuit court of Harrison county. A jury having been waived,

the trial-judge heard the evidence adduced, and upon due consideration, affirmed the judgment of the board of supervisors, and from this action of the court below, the case has been brought before us by appeal.

The questions involved are purely of fact, and the judgment of the court below must be treated as the finding of a jury.

The proofs show that the lots of the Investment Company in Gulfport are assessed at $30 per lot throughout the plot offered in evidence, and the contention of appellants' counsel is that this valuation is shown to be fictitious and excessive.

While it appears to be true that in two or three instances the lots of private persons are assessed at much less than the valuation put upon the Investment Company's property, yet it is also true that all other lots owned by individuals in Gulfport are assessed at a valuation far in excess of that placed upon the Investment Company's lots, and these individuals, so far as examined as witnesses, say their property is assessed at a fair valuation. It was furthermore plainly made to appear that the appellant had sold all lots disposed of by it to purchasers at prices ranging from about $50 to $200 or more, and that the appellant had never offered its lots as low as they were assessed.

It may be true, as contended by the appellant, that unless the Gulf and Ship Island railroad is revived and built, the lots in question may prove comparatively worthless. But that contention does not touch the issue presented. To say that the lands may prove, in event the railroad is built, to be of great value, but that the building of the railroad is problematical, and that the lands, in case the project of building the road is abandoned, will prove absolutely of no value, sheds no light upon the controversy, but rather tends to obscure and becloud it. Our law takes no such factor into the computation in fixing the taxable values of lands. The intrinsic value of the land to be assessed is to be determined by taking into consideration the improvement, also the proximity to navigation, or to any town, city, village or road, and any other circumstance that may tend to enhance the value, and not what it

might bring at a forced sale, but what the owner would be willing to accept and expect to get for it, if he were disposed to sell it.

Applying this standard of determining value to the property in question, we are constrained to the conclusion that the lots in question were not assessed at unfair and exorbitant valuations, and therefore that the action of the court below was not erroneous. If the circumstance of the possibility, not to say probability, of the construction of the Gulf and Ship Island railroad through central Mississippi, and northward, from its intersection with the Louisville and Nashville railroad at Gulfport, has tended to enhance the value of lots in the plot of that town, and has, in fact, so enhanced their value as to make the Investment Company willing to accept and expect to get for the lots not less than $30 each, if it were disposed to sell, then the assessment may not properly be reduced if the valuation was placed at that figure.

*Affirmed.*